Case 1:00-cv-00051-WRW    Document 30    Filed 06/23/00    Page 1 of 11

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 23 2000

JAMES W. McCORMACK, CLERK
By:
DEP. CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

| | |
|---|---|
| SAVE GREERS FERRY LAKE, INC. )<br>An Arkansas Not-For-Profit Corporation )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>)<br>United States Army Corps of Engineers; )<br>Colonel Thomas A. Holden, Jr., )<br>District Engineer, Little Rock District )<br>Corps of Engineers; Brig. Gen. Edwin J. )<br>Arnold, Division Commander, Southwest )<br>Division, U.S. Army Corps of Engineers; )<br>Lt. Gen. Joseph N. Ballard, Chief of Engineers)<br>U.S. Army Corps Of Engineers; Mr. Joseph )<br>Westphal, Assistant Secretary (Civil Works), )<br>U.S. Department of the Army; and Mr. Louis )<br>Caldera, Secretary of the United States )<br>Department of The Army. )<br>)<br>Defendants ) | Civil No. 1-00 CV 000051 WRW |

**BRIEF ON LIMITATIONS OF ACTIONS TO NEPA SUITS
AND MOOTNESS OF TERMINATION OF PERMIT ISSUE**

At the hearing on June 13, and in a letter to counsel for the parties dated June 14, the Court requested that we address the issue of the limitations period for filing a suit under NEPA; whether the doctrine of laches is applicable to such cases; and whether the persons to whom permits for boat docks were issued have a remedy against the Corps of Engineers for any damages they may have sustained by reason of the termination of the permits. Plaintiff also indicated that it would be interested in

briefing the issue of whether the Petition for Intervention was moot. Plaintiff will address those issues in the order listed.

### 1.     Statute of Limitations Applicable to NEPA

There is no statute of limitations contained within NEPA. Plaintiff believes that the general limitations period contained in 28 U.S.C. §2401(a) would be controlling. *Park County Resource Council, Inc. v. U.S. Dept. of Agriculture,* 817 F. 2d 609, 616 (10th Cir. 1987). That statute provides:

> (a)     Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

### 2.     Does the Doctrine of Laches Apply to NEPA Actions?

The doctrine of laches does apply to NEPA. However, the defense of laches is generally frowned upon in environmental cases. "Laches must be invoked sparingly in environmental cases because ordinarily the plaintiff will not be the only victim of alleged environmental damage. A less grudging application of the doctrine might defeat Congress' environmental policy." *Park County Resource Council, supra;* (citing *Preservation Coalition Inc. v. Pierce,* 667 F.2d 851 (9th Cir. 1982)). There are, however, certain situations in which the courts have accepted the laches defense. Usually, this arises on the issue of whether to grant preliminary injunctive relief, and focuses on the issue of whether the public interest would be harmed more by stopping a project that is

well underway, rather than continuing it in the absence of a NEPA Environmental Impact Statement. *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989). For example, in one successful defense involving laches, the 5th Circuit denied relief because the plaintiff had delayed filing suit for 19 months, and the majority of construction was completed on the project. *Save Our Wetlands, inc. v. U.S. Army Corps of Engineers*, 549 F.2d 1021, 1027 (5th Cir. 1977).

### 4. Potential Liability of the Corps of Engineers to the Permit Holders

The Court requested that the parties research the issue of whether the persons to whom permits were issued would have a claim against the Corps of Engineers. The answer appears to be that, at a minimum, they would have a claim against the Corps in the Court of Claims.

In *Ness Investment Corp. v. U.S.*, 219 Ct. Cl. 440, 595 F.2d 585 (1979), the plaintiff (Ness) was the recipient in 1965 of a 20-year special use permit from the U.S. Forest Service which authorized Ness to construct and operate a 46 acre resort facility in Arizona. In 1967, the Forest Service purported to amend the permit to reduce the permit area to 13.8 acres, and later revoked the permit. After attempting to sue the Forest Service in several other venues, Ness filed suit in the Court of Claims for breach of contract and taking of private property without due process of law. The Court of Claims assumed jurisdiction without question, and the Government did not challenge the jurisdiction of that court.

4. **The Petition for Intervention is Moot**

Simultaneous with the filing of this Brief, plaintiff has filed a response to the Motion for Intervention, asking, among other relief, that the Motion be denied on the basis of mootness. In order to put this issue in context, it will be necessary to briefly review events that transpired following the entry of the Preliminary Injunction by the Court on May 30.

On May 31, the Corps of Engineers issued a letter to persons to whom any permits for boat docks or vegetation modification were issued under the Shoreline Management Plan of 2000. The letter advised them of the Court's decision, and voided, as of that date, all permits issued under the SMP. That letter, relative to the boat dock permits, states:

> 1. If you requested rezoning of "Protected Area" to "Limited Development Area" for the purpose of a boat dock, courtesy dock, swimming platform or other structure, and the Corps granted the rezoning on March 14, 2000, *that request and rezoning has been voided.* It also means that if you requested a permit to build a dock or have already received permission to build a dock on Greers Ferry Lake, *that permit is no longer valid* and you cannot take any positive action to place a dock on Greers Ferry Lake at this time. (Emphasis supplied)

The letter of the Corps of Engineers dated May 31, 2000, is attached to this brief as Exhibit A. The quoted language is clear and unambiguous. The boat dock permits have already been voided by the Corps

The Shoreline Management Plan of 2000, pursuant to which the permits were issued, reserved to the Corps the right to terminate the permits at any time. (see Shoreline Management Plan, §6-07 – Permit Term (Administrative Record, Vol. 1, p. 10000569) and §6-13 – Permit Revocation (Admin. Record, Vol. 1, p. 10000571)). Shoreline use permits (including private floating facilities) are subject to revocation by the Corps whenever the District Engineer determines that the public interest requires such revocation.) In this case, the Corps determined that, in light of the preliminary injunction, the public interest required that the permits be revoked.

Also, the permits issued by the Corps for installation of the boat docks expressly provided that the permits could be terminated at any time. There are two provisions in the permits dealing with the subject of termination:

26. By 30 days written notice, mailed to the permittee by certified letter, the district commander may revoke this permit whenever the public interest necessitates such revocation or when the permittee fails to comply with any permit condition or term. The revocation notice shall specify the reasons for such action. If the permittee requests a hearing in writing to the district commander through the resource manager within the 30-day period, the district commander shall grant such hearing at the earliest opportunity. In no event shall the hearing date be more than 60 days from the date of the hearing request. Following the hearing, a written decision will be rendered and a copy mailed to the permittee by certified letter.

27. Notwithstanding the condition cited in condition 26, if in the opinion of the district commander, emergency circumstances dictate otherwise, the district commander may summarily revoke the permit.

A copy of one of the Permits, including the standard conditions quoted above, is attached hereto as Exhibit "B.

There are many flaws in the Intervention Petitioners' position. First, the permits they received were issued pursuant to a plan that has been declared illegal and of no effect. The permits that were issued pursuant to a void plan can have no greater effect than the plan itself. Thus, the issue of the validity of the permits first became moot when the Court voided the Shoreline Management Plan.

Second, the permits were *revocable* permits – revocable at any time that the Corps determined that it was in the public interest or emergency circumstances dictated that they be terminated. The permit holders acquired the permits subject to the possibility that they would be terminated, and they have no right to complain when that eventuality occurred.

Third, the issue of whether to revoke some or all of the permits became doubly moot when the Corps terminated the permits. There is no longer an Article III claim or controversy over which this Court has jurisdiction involving the permits, and the Petition for Intervention must be dismissed.

The doctrine of mootness was discussed succinctly in the case of *New Jersey Turnpike Authority v. Jersey Central Power and Light*, 772 F.2d 25 (3d Cir. 1985), in which Circuit Judge Higginbotham, writing for the Court, quoted from the Supreme Court decision in *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1985), as follows:

> The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment

of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment but will dismiss the appeal.

In *Missouri, ex rel. Nixon v. Craig*, 163 F.3d 482 (8th Cir. 1998), the State of Missouri challenged an "annual operating plan" for navigation on the Missouri River. By the time the case was held, the navigation season that the plan addressed had passed. The Eighth Circuit held that the case was moot, and stated:

> "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." (citing cases) "It is of no consequence that the controversy was live at earlier stages in this case; it must be live when we decide the issues." (citing cases) "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."

Finally, a close reading of the Petition for Intervention shows that only two of the petitioners had actually constructed boat docks. Only a few others had actually obtained the necessary permits for the docks, but had not constructed them, while many of the petitioners had not obtained permits or even applied for permits. According to the Corps Brief of June 12, some of the petitioners for intervention had contracts for construction of boat docks that were conditioned upon the outcome of this case. Many others were undoubtedly aware of the pendency of this suit, and simply gambled that the permits were not in jeopardy. Should the Court grant the Petition for Intervention, full-scale hearings will be required to delve into each person's knowledge of the suit, the status of their dock development, and other relevant factors.

CONCLUSION

The Court does not have jurisdiction over the disposition of the permits that are the subject of the Petition to Intervene, because that issue has been mooted by the Court's ruling voiding the Shoreline Management Plan of 2000, upon which the permits were based, as well as the action of the Corps of Engineers in revoking those permits on May 31, 2000. The permit holders' remedies would now appear to lie elsewhere, possibly including the filing of claims against the Government in the U.S. Court of Claims.

Regardless of whether the Court agrees with plaintiff's characterization of the boat dock permit issue as moot, from a legal and judicial policy perspective, it would be disastrous to honor any of the permits and allow any docks placed on Greers Ferry Lake in reliance on those permits to remain. The permits were revocable, and the permit holders had no rights that were not terminable at the will of the Corps. To allow the docks to remain would send the message that, to avoid the spirit and intent of NEPA, and to frustrate judicial review of agency action, all an agency (and those to whom an agency issues permits) must do is to act quickly to carry out the license granted by the permit, regardless of the permit's validity.

While ordering the removal of all docks placed on the Lake pursuant to the invalid and voided permits may initially seem harsh, the permit recipients assumed the risk of the revocation of the permits by the express conditions of the permits. More

important, however, is that the integrity of NEPA and the judicial review process will be maintained by such action.

Respectfully submitted,

*[signature: Richard H. Mays]*

RICHARD H. MAYS, ESQ. (AR BAR #61043)
ENVIRONMENTAL LEGAL SERVICES
TCBY Tower – 15th Floor
425 West Capitol Avenue
Little Rock, AR 72201
(501) 372-3310

Attorney for Plaintiff
Save Greers' Ferry Lake, Inc.

## CERTIFICATE OF SERVICE

I, Richard H. Mays, do hereby certify that I have, on this 22nd day of June, 2000, served a copy of the foregoing document on the parties listed below by depositing the said copy in the United States Postal Service, postage prepaid, and addressed to:

> Richard M. Pence, Jr., Esq.
> Assistant U.S. Attorney
> P.O. Box 1229
> Little Rock, AR 72201

10

Jim L. Julian, Esq.
Chisenhall, Nestrud & Julian, P.A.
400 West Capitol Ave. – Suite 2840
Little Rock, AR  72201

_____
Richard H. Mays

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

*Exhibits Attached to Original Document in Court's Case File*